Filed 11/17/14  P. v. Toti CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>GARY ALBERT TOTI,<br><br>　　　　Defendant and Appellant. | A137670<br><br>(Marin County Super Ct.<br>No. SC175399A) |

Defendant and appellant Gary Albert Toti (defendant) appeals from his convictions for sodomy of a child and other sexual abuse charges.  He contends the trial court erred in refusing to give the jury a pinpoint instruction.  We reject that contention, but modify the award of presentence custody credit.

PROCEDURAL BACKGROUND

Defendant was charged by amended information with sodomy of a child 10 years old or younger (Pen. Code, § 288.7, subd. (a);[1] counts one and two), oral copulation with a child 10 years old or younger (§ 288.7, subd. (b); count three), and lewd acts upon a child under 14 years old (§ 288, subd. (a); counts four, five, and six).  A jury found defendant guilty as charged.

The trial court sentenced defendant to 25 years-to-life in prison on count one, and imposed concurrent sentences of 25 years-to-life on count two and 15 years-to-life on count three.  The court imposed concurrent sentences of eight years on counts four, five,

_____

[1] All further undesignated statutory references are to the Penal Code.

1

and six.  Defendant received 175 days of actual custody credit on all counts, and 26 days conduct credit on counts four, five, and six.

FACTUAL BACKGROUND

The victim, Emma Doe (born 5/03), lives in Fontana with her mother, father, and older brother.  Defendant is married to the victim's paternal grandmother.  Defendant and his wife lived in Novato, where the victim and her brother would come for visits, sometimes with their parents and sometimes on their own.

In March 2011, the victim told her mother that she "had sex with grandpa," referring to defendant.  The victim explained that there was "a lot" of mutual touching and that "he stuck his doodle in her butt."  "Doodle" was the word the victim used to refer to a penis.  The victim's mother called the police.

Officer Kirsten Ryn spoke to the victim alone.  The victim told the officer that defendant "stuck his doodle in her butt."  Officer Ryn testified, "She told me that her grandfather had stuck his doodle in her butt, that it hurt when he put it all the way in, that, sometimes, it would be sticky when he took it out."  The victim told the officer that the most recent incident had occurred during a Thanksgiving 2010 visit while the victim and defendant were watching television on defendant's bed.  The victim also described other incidents to Officer Ryn not relevant to the issues on appeal.

The victim was interviewed at the Children's Assessment Center by a "forensic interview specialist."  The victim described various acts of sexual abuse by defendant.  She said defendant put his penis "in" her "butt" on various occasions and described the sensation in detail.

In April 2011, the victim made a pretext call to defendant.  The victim said she did not want to "have sex anymore."  Defendant said "don't worry about that" and "I agree with that."  The victim said it hurt when he put his doodle "in" her "butt," and defendant responded, "Well if you don't be crazy anymore and I know that's inappropriate and we won't do that."

2

Defendant was arrested and spoke to a police officer after waiving his *Miranda* rights. Defendant admitted some inappropriate sexual touching and admitted his penis touched the victim's bottom, but he denied there was penetration.

A "forensic pediatric nurse practitioner" examined the victim. The victim said it "really hurt" when defendant put his penis in her "back part." The nurse did not see any tearing or other signs of abuse; she testified it is possible for an adult penis to enter a child's anus and not cause any tearing.

The victim testified that defendant "molested" her, including by putting his penis "inside" her "butt." She testified, ". . .when he puts his penis inside my butt, sometimes, he would push too hard and it would hurt." She testified to an occasion when this occurred in a car. On cross-examination, she said she was "not sure" whether defendant's penis actually went into her butt. She later testified his penis went in her butt "crack," rather than her "butthole." She also described an incident during her family's last visit to defendant's home; she testified she was in defendant's bedroom and "his penis went inside my butt." The prosecutor analogized the butt "crack" to the opening in a tissue box, and the victim testified she felt defendant's penis "[i]nside the crack."

Defendant testified at trial and denied sexually abusing the victim. He claimed he has erectile dysfunction and cannot achieve an erection. Defendant's wife corroborated aspects of defendant's testimony, and various character witnesses testified on behalf of defendant.

DISCUSSION

I.   *Pinpoint Instruction*

Defendant contends the trial court erred in refusing to give a pinpoint instruction regarding the defense theory on the sodomy charges in counts one and two. The trial court did not err and, in any event, any error was harmless.

" 'A criminal defendant is entitled, on request, to instructions that pinpoint the theory of the defense case.' [Citation.] Specifically, a criminal defendant 'is entitled to an instruction that focuses the jury's attention on facts relevant to its determination of the existence of reasonable doubt. . . .' [Citation.] But where standard instructions fully and

3

adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 856-857; see also *People v. Hartsch* (2010) 49 Cal.4th 472, 500 (*Hartsch*).) An error in refusing a pinpoint instruction requires reversal only where it is reasonably probable the outcome would have been more favorable to the defendant absent the error. (*People v. Wilkins* (2013) 56 Cal.4th 333, 349 (*Wilkins*).)

The requested pinpoint instruction was as follows: "In deciding whether the People have proved beyond a reasonable doubt the offense charged in [Counts 1 and 2], you must impartially compare and consider all of the evidence that was received on the issue of whether the defendant penetrated the anus of Emma Doe with his penis.[¶] To convict the defendant of this charge, you must find beyond a reasonable doubt that he penetrated her anus. Touching or pressing his penis against her 'butt crack', without penetration of the anus, does not constitute sodomy within the meaning of these instructions.[¶] If you have a reasonable doubt that the defendant penetrated the anus of Emma Doe with his penis, you must find the defendant not guilty of this offense."

The People point out, and defendant does not dispute, that the only portion of that pinpoint instruction not covered by the other instructions given by the trial court is the statement, "Touching or pressing his penis against her 'butt crack', without penetration of the anus, does not constitute sodomy within the meaning of these instructions."

The language that "touching or pressing" the victim's "butt crack" does not constitute penetration of the anus is just stating the obvious—that touching or pressing is not penetration. Defendant argues, "[t]he instruction focused the jury's attention on the critical legal point that penetration of the 'butt crack' was not sufficient to constitute sodomy." However, that was *not* the significance of the instruction. The proffered instruction simply informed the jury that *touching or pressing* against the "butt crack" did not constitute penetration of the anus. The instruction said nothing about the legal significance of *penetration* of the "butt crack." Indeed, it would not have been appropriate for the trial court to instruct the jury on that point, because it was for the jury to decide what the victim meant when she referred to penetration of her butt "crack."

4

That was the contested factual issue at trial—whether, if defendant sexually abused the victim at all, defendant penetrated her anus or only put his penis between her buttocks but not inside her anus. The victim clearly and repeatedly testified that defendant placed his penis *inside* one of those areas, rather than just touching or pressing on an outer area of the victim's bottom. Because the proffered instruction stated the obvious and was of little relevance to the actual contested issues in the case, the trial court did not err in refusing to give it.

Even if the trial court did err, the refusal was harmless. As explained above, the proposed instruction did not address the actual contested factual issue of whether defendant penetrated the victim's anus or only placed his penis between her buttocks. Moreover, there is no possibility the jury was confused and believed touching or pressing against the butt "crack" constituted penetration of the anus. Finally, defendant's counsel could and did argue to the jury that the victim's testimony showed defendant only put his penis between her buttocks and did not penetrate her anus; no special instruction was needed for the jury to understand the significance of that distinction. (*Hartsch, supra,* 49 Cal.4th at p. 503 ["The logic of the inference [the proposed pinpoint instruction] described was plain, and was argued to the jury by counsel."].) There is no reasonable probability the outcome would have been more favorable to defendant had the trial court given the requested pinpoint instruction. (*Wilkins*, *supra*, 56 Cal.4th at p. 349.)

II. *Custody Credit*

At the time of sentencing, defendant had accrued 175 days of actual custody credit. In addition, the trial court gave defendant 26 days conduct credit on the determinate sentences on counts four, five, and six. However, the court did not give defendant any conduct credit on counts one, two, and three, as to which indeterminate terms were imposed.[2] The parties agree that, under *People v. Brewer* (2011)

---

[2] The minute order and abstract of judgment state that no credit was awarded on counts one, two, and three, but the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 ["Where there is a discrepancy between the oral

5

192 Cal.App.4th 457, 459, defendant was entitled to presentence conduct credit on the indeterminate terms. We agree and will direct the trial court to correct the abstract of judgment.

DISPOSITION

The judgment is modified to reflect that defendant's 201 days of presentence custody credit, consisting of 175 days in actual custody and 26 days of conduct credit, apply to all counts. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

---

pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."].)

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

7